IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**COLE B.,**[1]

                              Plaintiff,                      Civ. No. 6:19-cv-01619-MK

v.                                                                 **OPINION AND ORDER**

**COMMISSIONER SOCIAL SECURITY ADMINISTRATION**

                              Defendant.

**KASUBHAI, Magistrate Judge:**

      Plaintiff Cole B. ("Plaintiff") brings this action for judicial review of the Commissioner of Social Security's ("Commissioner") decision denying his application for Supplemental Security Income under Titles XVI of the Social Security Act ("the Act"). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the reasons below, the Commissioner's final decision is reversed.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental parties in this case.

Page 1 – OPINION AND ORDER

## BACKGROUND

Born in 1992, Plaintiff was 23 years old when he applied for SSI benefits on August 24, 2016. (Tr. 198.)[2] He alleged a disability onset date of November 18, 1992. (Tr. 182-88.) Plaintiff completed the twelfth grade and has no past relevant work experience. (Tr. 191-97, 203.) Plaintiff alleges disability due to ADHD, autism spectrum disorder, Asperger's syndrome, and migraines. (202.)

Plaintiff's claim for SSI was denied initially and upon reconsideration. (Tr. 80, 93.) He requested an administrative hearing, an appeared before an administrative law judge (ALJ) on August 28, 2018. (Tr. 36-79.) In a written decision dated October 31, 2018, the ALJ denied Plaintiff's claim for benefits. (Tr. 13-35.) The Appeals Council denied Plaintiff's subsequent petition for review, rendering the ALJ's decision final. (Tr. 1-6.) This appeal followed.

## STANDARD OF REVIEW

A reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, a court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. Davis v. Heckler, 868 F.2d 323, 326 (9th Cir. 1989).

---

[2] "Tr." refers to the Transcript of the Social Security Administrative Record, ECF No. 11, provided by the Commissioner.

Page 2 – OPINION AND ORDER

**DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. See 20 C.F.R. § 404.920(a)(4) (2012). The burden of proof rests upon the claimant at steps one through four, and with the Commissioner at step five. Id.; Bustamante v. Massanari, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner must demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.920(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is disabled. Id. If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. Id.; see also Bustamante, 262 F.3d at 953–54.

The ALJ performed the sequential evaluation. At step one, the ALJ found that Plaintiff had not performed substantial gainful activity since his application date of August 24, 2016. (Tr. 18.) At step two, the ALJ found Plaintiff had the severe impairments of ADHD-PISCT, autism spectrum disorder, persistent depressive disorder, and anxiety disorder. (Id.)

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled any listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19.)

Prior to step four, the ALJ determined that Plaintiff's RFC allowed him to work at all exertional levels with the following limitations: he can understand, remember, and carry out only simple, routine job tasks consistent with a reasoning level of 2 or less; and he requires a static work environment with few changes in work routines and settings. (Tr. 21.)

At step four, the ALJ found that Plaintiff had no past relevant work. (Tr. 28.) At step five, the ALJ found that based on plaintiff's age, education, and RFC, he could perform work that existed in significant numbers in the national economy despite his impairments, including the representative occupations of night cleaner, clean-up worker, and hand packager. (Tr. 29.) The ALJ therefore concluded that Plaintiff was not disabled. (Id.)

Plaintiff contends the ALJ erred by (I) rejecting the medical opinion of treating neuropsychologist William Trueblood, Ph.D., (II) rejecting Plaintiff's subjective symptom testimony, (III) assigning little weight to the lay opinion of Linda Baxter, and (IV) failing to find that his symptoms meet or equal a listed impairment at step three of the sequential evaluation process.

**I.    Medical Opinion Evidence**

Plaintiff argues that the ALJ improperly rejected the opinion of treating neuropsychologist William Trueblood, PhD. "There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009). "Where a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" Id. (citation omitted). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting Reddick

v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." Id. "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." Id. at 1012-13 (citing Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996)).

Dr. Trueblood first examined Plaintiff in early 2016. He performed a neuropsychological evaluation and diagnosed ADHD. (Tr. 279-91.) He opined that Plaintiff would have difficulty in multiple areas of functioning. (Tr. 279-80.) Dr. Trueblood performed a second neuropsychological exam in September 2018. (Tr. 472.) He diagnosed autism spectrum disorder and persistent depressive disorder. (Id.) He also opined that Plaintiff had "markedly reduced information processing speed," significant deficits in memory and concentration, and problems with "day to day life" with respect to motivation, procrastination, and maintaining attention. (Tr. 472-78.)

Dr. Trueblood submitted a medical source statement to the Appeals Council after the ALJ rendered his written decision. (Tr. 7-9.) This statement, dated December 11, 2018, indicated that Plaintiff has marked limitations in the ability to carry out complex instructions, the ability to make judgments on complex work-related decisions, and the ability to interact appropriately with the public, supervisors, and co-workers. (Id.) The Appeals Council incorporated this evidence into the record but found that it did "not show a reasonable probability that it would change the outcome of the [ALJ's] decision." (Tr. 2.)

The Commissioner argues that because Dr. Trueblood did not perform a functional assessment, translating Plaintiff's symptoms into specific functional limitations, the ALJ was not

required to incorporate his limitations into the RFC. Valentine, 574 F.3d at 691-92. However, Dr. Trueblood's December 2018 medical source statement clearly provides a functional assessment of Plaintiff's social and cognitive skills necessary to perform substantial gainful activity. (Tr. 7-9.) Thus the Commissioner's first argument in support of the ALJ's evaluation of the medical evidence is moot.

The ALJ rejected Dr. Trueblood's February 2016 assessment because it predated the relevant period, which began on Plaintiff's application date of August 24, 2016. In support of the ALJ's rejection of Dr. Trueblood's opinion, the Commissioner also notes that Dr. Trueblood recommended vocational rehabilitation therapy, interpreting this as an indication that Plaintiff would be able to perform work activity with some additional treatment. (Tr. 280, 473.) Even if this interpretation were reasonable, Dr. Trueblood's most recent opinion made no such recommendation. (Tr. 7-9.) Rather, the most current medical opinion in the record indicates that Plaintiff's very low processing speed would make his potential productivity in a work setting "very low." (Tr. 8.) The Commissioner has thus failed to identify substantial evidence supporting the ALJ's wholesale rejection of Dr. Trueblood's opinion.

As a final reason for rejecting Dr. Trueblood's opinion, the ALJ noted that Dr. Trueblood's opinion regarding Plaintiff's marked mental limitations was contradicted by the improvement of Plaintiff's mental conditions with medication. (Tr. 26.) The ALJ may reject a physician's opinion that is not consistent with the overall medical record. Ghanim, 763 F.3d at 1161. Here, Plaintiff reported overall improvement after he began taking Adderall for his ADHD in May 2016. (Tr. 321.) In July 2016 Plaintiff reported an improvement in his attention span. (Tr. 313.) The following month, Plaintiff reported a decrease in anxiety. (Tr. 354.) Although his symptoms reportedly worsened in November 2016, a new medication led to further improvement. (Tr. 446, 449.) These

improvements, however, nevertheless did not raise Dr. Trueblood's assessment of Plaintiff's limitations in several areas to anything less than "marked." (Tr. 7-9.) In other words, even with the benefits of multiple medications, Plaintiff nevertheless presented to his treating neuropsychologist in December 2018 as markedly limited in multiple areas of mental and social functioning. (Id.) On this record, evidence of Plaintiff's temporary improvement with medications does not support the ALJ's rejection of Dr. Trueblood's opinion regarding Plaintiff's mental limitations. Because the ALJ's evaluation of the medical evidence was not supported by substantial evidence, remand is appropriate.

## II.    Subjective Symptom Testimony

Plaintiff also argues the ALJ improperly rejected his subjective symptom testimony. The ALJ is required to provide specific, clear and convincing reasons for rejecting a claimant's testimony. Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014).

At the administrative hearing, Plaintiff testified that he was unable to work because of his disabling mental limitations, which caused difficulties in showing up on time for school and in his ability to focus.  The ALJ rejected this testimony, finding that Plaintiff's allegations conflicted with the objective medical evidence in the record. (Tr. 22-25.) Contradiction with the medical record is a sufficient basis for rejecting a claimant's subjective symptom testimony. Carmickle v. Comm'r, 533 F.3d 1155, 1161 (9th Cir. 2008). Here, the ALJ noted that Plaintiff presented to his primary care provide on multiple occasions as euthymic, with logical thought processes and intact memory and normal attention span, with normal mental status examinations. (Tr. 318-19, 321-22, 324-25, 464-65.) Plaintiff also showed up to his medical appointments on time, appearing well-groomed and cooperative. (Tr. 318, 321, 324.) The ALJ inferred from this evidence that Plaintiff was less limited than alleged in his testimony. However, while this handful of instances shows that

Page 7 – OPINION AND ORDER

Plaintiff was occasionally able to be on time and focus, there is ample medical evidence of marked mental limitations to support Plaintiff's testimony that he nevertheless experienced difficulties with focusing and showing up on time to school. (Tr. 7-9, 475.) On this record, the ALJ's reasoning was not supported by substantial evidence because the longitudinal medical record does not contradict Plaintiff's testimony. Carmickle, 533 F.3d at 1161.

The Commissioner also argues that Plaintiff's mental symptoms improved with treatment, which included medication and counseling, and therefore contradicted his testimony regarding his symptoms and limitations. The effectiveness of medication and other treatment is a relevant factor to consider in evaluating the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3). Here, Plaintiff's mental symptoms improved when he began taking Adderall, and he also reported improvements in his attention span and a decrease in anxiety. (Tr. 313, 321, 354.) However, Dr. Trueblood found Plaintiff's improvement on medication to be insignificant with respect to his marked limitations on social and mental functioning. (Tr. 7-9.) On this record, Plaintiff's minimal improvement with treatment was not a sufficient reason to discount part of Plaintiff's testimony. 20 C.F.R. § 416.929(c)(3).

In sum, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony regarding his symptoms and limitations.

### III. Lay Witness Testimony

Plaintiff next argues that the ALJ improperly rejected the lay testimony of his mother, Linda B. Ms. B. reported that Plaintiff had problems with concentration and difficulties with leaving the house. (Tr. 231.) She also stated that Plaintiff "shuts down" with stress; lacked the motivation to go shopping for groceries; had difficulties getting along with others; and lacked motivation to perform chores. (Tr. 236-37, 270-71, 273.)

The ALJ may discount a lay witness opinion if he provides germane reasons for doing so. Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Germane reasons for rejecting lay testimony include inconsistency with the medical evidence. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). Here, the Commissioner argues that Ms. B.'s statements were inconsistent with the record of Plaintiff's improvement with medication, and with the largely unremarkable objective findings regarding his mental limitations. (Tr. 27.) The Court disagrees. As discussed above, Plaintiff's minimal improvements in intellectual skills were not sufficient to change his marked limitations in mental functioning. (Tr. 7-9.) Further, Dr. Trueblood noted that Plaintiff's improvements with medication were so minimal as to be "probably … not significant." (Tr. 475.) On this record, the ALJ failed to provide a germane reason for rejecting the lay witness testimony. Dale, 823 F.3d at 943.

## IV. Step Three Findings

Plaintiff also argues that the ALJ erred at step three. At step three, the ALJ is required to evaluate the "paragraph B" criteria to determine if the severity of a claimant's mental impairment meets or is medically equal to the criteria of a listed impairment. 20 C.F.R. Pt. 404, Subpt. P, App's 1, 12.00. The paragraph B criteria measure a claimant's ability to understand, remember, or apply information, interact with others, concentrate, persist, or maintain pace, and adapt or manage oneself. To meet these criteria, a claimant must have an extreme limitation of one, or marked limitation of two, of these areas of mental functioning. Id. Here, the ALJ failed to properly credit the medical evidence, the lay evidence, and Plaintiff's testimony, which indicated that Plaintiff has marked limitations in at least two areas of functioning articulated in paragraph B. The ALJ therefore erred at step three by failing to find that Plaintiff met or equaled a listed impairment.

## **REMAND**

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citation omitted). In a number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." Garrison, 759 F.3d at 1021. The credit-as-true standard is met if the following conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Id. at 1020 (citations omitted). Even when the credit-as-true standard is met, the district court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Garrison, 759 F.3d at 1021.

Here, the ALJ failed to provide legally sufficient reasons for rejecting Dr. Trueblood's opinion, Plaintiff's subjective symptoms testimony, and the lay opinion evidence. When the improperly rejected evidence is credited as true, the ALJ would be required to find Plaintiff disabled on remand. Specifically, when Dr. Trueblood's opinion is credited as true, Plaintiff meets the paragraph B criteria of a listed impairment under Listing 12.00. On this record, further administrative proceedings would serve no useful purpose; therefore, this case is remanded for the payment of benefits.

**CONCLUSION**

For the reasons stated above, the Commissioner's final decision is REVERSED and REMANDED for the immediate payment of benefits, under sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED this 16th day of November 2020.

s/ Mustafa T. Kasubhai  
MUSTAFA T. KASUBHAI  
United States Magistrate Judge